## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD RAYMOND,

                Plaintiff,                    Case Number: 2:09-CV-11396

v.                                      HON. MARIANNE O. BATTANI

DEBRA SCUTT,

                Defendants.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Richard Raymond filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner in the custody of the Michigan Department of Corrections pursuant to a second-degree murder conviction. He raises fourteen grounds for habeas relief. Respondent argues that the claims are meritless and/or procedurally defaulted.

The Court denies the petition.

## I.    Background

Petitioner's conviction arises from the stabbing death of Rodney Johnson, on September 17, 1994, in Lansing, Michigan. The Michigan Court of Appeals provided a factual overview of the case, which is presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), as follows:

Defendant's conviction resulted from the stabbing death of Rodney Johnson during a drug transaction gone bad.  The victim, whom witnesses testified was unarmed, suffered a nonfatal stab wound to his abdomen and a fatal stab wound to his inner right thigh.[2]  Additionally, the victim had cuts on the fingers of his right hand that appeared to be defensive wounds.

During the incident, defendant was overheard to say, "I told you don't f[uck] with me" and, "That'll show you."  Subsequently, defendant told a friend that during a drug transaction with the victim, the victim attempted to steal defendant's marijuana.  Defendant told his friend that he stabbed the victim in the stomach and leg.  Defendant did not mention having to defend himself during the incident.  In fact, defendant was heard to say that he "got the nigger."[3]  Another friend testified that he was with defendant when defendant threw the knife used to stab the victim into the river.

At trial, defendant testified that he picked up the victim in order to trade some homegrown marijuana for crack cocaine.  Twice the victim directed defendant to a location where the victim left with the marijuana and returned with crack cocaine, which the two men then smoked together.  Defendant wanted more crack cocaine, so they went to defendant's house to retrieve more marijuana to trade with, whereupon the victim made a telephone call and said that he could arrange another trade.  The victim then directed defendant to another location and left with the marijuana as before.  Subsequently, defendant began to look for him. The victim, when spotted by defendant, began to run.  Defendant pursued the victim.  The chase ended at defendant's car.  The victim threw the marijuana to the ground near the rear bumper.  Defendant testified that as he reached to pick it up, the victim stabbed at him with an umbrella.  Defendant then took out his knife and the victim laughed, saying, "Oh, you got a knife."  The victim then tried to kick defendant in the groin but defendant brought his arm down to defend himself, stabbing the victim in the leg.  Defendant asserted that the victim then came at him again and when defendant pushed him away, he stabbed him in the side.  Defendant then said to the victim, "[D]on't ever come back to my house, because I'll fix you."  Defendant claimed that he did not intend to kill the victim and that he threw the knife in the river because he was afraid.

_____

[2]This wound caused excessive blood loss.

[3]Defendant told other friends that the victim was poking him with an

2

umbrella and that he stabbed the victim to defend himself.

*People v. Raymond*, No. 195891, 2000 WL 33401824, *1 (Mich. Ct. App. Nov. 17, 2000).

## II.    Procedural History

Petitioner was charged in Ingham County Circuit Court with first-degree murder. A jury found him guilty of second-degree murder.  On May 15, 1996, he was sentenced to 20 to 30 years in prison.

Petitioner appealed his conviction to the Michigan Court of Appeals.  He raised these claims:

I.      Defendant was denied his state and federal rights to present a defense and to a fair trial where the trial court ordered him to undergo a criminal responsibility examination where the defense was not insanity and, when defendant refused to comply, excluded all evidence regarding defendant's personality even though it was central to the defense.

II.     The failure to instruct that the prosecution had the burden of proving the absence of heat of passion beyond a reasonable doubt in order to convict defendant of murder rather than manslaughter, denied defendant his state and federal constitutional right to due process of law.

III.    The failure of the trial court to define the term "great bodily harm" in the course of the instruction on second degree murder coupled with an erroneous instruction on the defense of accident was reversible error and deprived defendant of a fair trial.

IV.     Defendant was denied due process of law by the denial of his motion for directed verdict on the charge of first degree murder and the fact that his conviction of second degree was based on insufficient evidence.

V.      The verdict was against the great weight of the evidence.

VI.     Defendant was denied a fair trial by the trial court's refusal to give his

requested instruction on imperfect self defense.

VII.     Defendant was denied his state and federal due process rights to a fair trial
         where the trial court gave only the standard jury instruction on reasonable
         doubt and refused to give either of two instructions requested by defendant
         even after the prosecutor made an argument which denigrated the
         reasonable doubt standard.

VIII.    Defendant was denied a fair trial by the prosecutor's injection of racism into
         the trial as a motive for the killing and the prosecutor's statement of belief
         in the truthfulness of prosecution witnesses.

IX.      Defendant's minimum sentence of twenty years, in excess of the guidelines
         range of four to fifteen years, was disproportionate and was an abuse of
         discretion.

The Michigan Court of Appeals affirmed the conviction. *People v. Raymond*, No.

195891, 2000 WL 33401824 (Mich. Ct. App. Nov. 17, 2000).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court.

He raised these claims:

I.       Defendant was denied a fair trial by the prosecutor's injection of racism into
         the trial as a motive for the killing and the prosecutor's statement of belief
         in the truthfulness of prosecution witnesses.

II.      Defendant was entitled to use expert psychological evidence to explain why
         he acted in an excited manner after killing the victim and to inform the jury
         that he was more susceptible to provocation than the average person
         therefore it is reversible error based on ineffective assistance of counsel
         where defendant's due process rights are denied by failure of counsel to
         provide an alternative forensic order and defendant is denied a legitimate
         defense.

III.     Defendant was denied due process and a fair trial where there was
         insufficient evidence to convict defendant of second-degree murder
         because: a) defendant acted in hot blood and in the heat of passion rather
         than judgment negating second degree murder; b) the evidence supports the
         defense of self defense; and c) if this court were to believe the court's ruling

4

that the defendant was the initial aggressor then the defendant is either not guilty or guilty of manslaughter on the theory of imperfect self defense.

IV.     Defendant was denied due process and a fair trial when the trial court denied defendant's motion for a directed verdict on the charge of first-degree murder forcing the jury to reach a compromise verdict because there was insufficient evidence to convict defendant of first-degree premeditated murder.

III.    Defendant was denied a fair trial and due process when the court failed to give the requested instruction on imperfect self defense.

IV.     The trial court committed reversible error when failing to give a proper 'when to acquit' definition of reasonable doubt that tended to constitutionally reduce the prosecution's burden of proof from "absolute" or "utmost [evidentiary] certainty", and refused to give either of the instructions requested by defendant even after the prosecutor made an argument which denigrated the reasonable doubt standard, denying defendant his absolute right to a fair trial and due process.

V.      The failure to instruct that the prosecution had the burden of proving the absence of heat of passion beyond a reasonable doubt in order to convict defendant of murder rather than manslaughter denied defendant his state and federal constitutional right to due process.

VI.     The failure of the trial court to define the term "great bodily harm" when instructing on second degree murder coupled with an erroneous instruction on the defense of accident was reversible error and deprived defendant of a fair trial.

VII.    Defendant was denied due process and a fair trial when one of the jurors gave false information during voir dire.

VIII.   The trial court committed reversible error in its evidentiary ruling by foreclosing evidence of the decedent's character traits and reputation in the community for violence and ripping people off, where the evidence was offered as circumstantial evidence to establish the decedent was the primary aggressor, thus denying defendant fundamental fairness, due process, a fair trial and the right to present a defense.

IX.     Defendant was denied the effective assistance of trial counsel, a fair trial,

5

and confrontation, when counsel failed to make use of the discovery materials provided to him prior to trial for impeachment purposes.

X.      Defense counsel's failure to object to the prosecutor's personal beliefs, and erroneous jury instructions, denied petitioner due process, a fair trial, and the effective assistance of counsel.

XI.     Petitioner was denied due process and a fair trial because of the cumulative effect of the ineffective assistance of counsel, prosecutorial misconduct, jury instructions, and juror misconduct.

XII.    Defendant's minimum sentence of twenty years, in excess of the guidelines range of four to fifteen years, was disproportionate and was an abuse of discretion.

The Michigan Supreme Court denied leave to appeal. *People v. Raymond*, 463 Mich. 1014 (Mich. Apr. 30, 2001).

Petitioner filed a motion for relief from judgment in the trial court. He raised these claims in his original and amended motions: (i) counsel was ineffective for failing to investigate and raise defenses of insanity, diminished capacity, voluntary intoxication and involuntary intoxication; (ii) counsel was ineffective because he revealed that Petitioner was incarcerated while on trial; (iii) the trial court improperly admitted evidence during the trial and counsel was ineffective for failing to object; and (iv) counsel was ineffective for failing to raise these issues. Petitioner filed two amended motions for relief from judgment raising Confrontation Clause and sentencing claims. The trial court conducted a *Ginther* hearing, then denied Petitioner's original motion for relief from judgment on August 11, 2005. *People v. Raymond*, No.   (Ingham County Cir. Ct. Aug. 11, 2005). Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and

6

Michigan Supreme Court.  Both state appellate courts denied leave to appeal.  *People v. Raymond*, No. 267814 (Mich. Ct. App. July 27, 2006); *People v. Raymond*, 477 Mich. 944 (Mich. Nov. 29, 2006).

On June 27, 2007, Petitioner filed a third amended motion for relief from judgment.  The trial court issued an Order denying Petitioner's third amended motion for relief from judgment, which raised a *Crawford*-related claim.  *People v. Raymond*, No. 95-69404-FC (Ingham County Cir. Ct. Sept. 4, 2007).  Both Michigan appellate courts denied Petitioner's applications for leave to appeal the trial court's decision.  *People v. Raymond*, No. 282946 (Mich. Ct. App. June 4, 2008); *People v. Raymond*, 482 Mich. 1064 (Mich. Nov. 25, 2008).

Petitioner then filed the pending petition.  He raises these claims:  (1) Petitioner was denied a fair trial because the prosecutor injected racism into the trial as a motive for the murder and stated her belief in the truthfulness of her witnesses; (2) Petitioner's trial counsel was ineffective for failing to present expert testimony about why Petitioner acted in an excited manner after killing the victim and to inform the jury that he was more susceptible to provocation than the average person; (3) insufficient evidence was presented to support second-degree murder conviction; (4) the trial court should have granted Petitioner's motion for a directed verdict on first-degree murder; (5) the trial court erred when it failed to instruct on imperfect self-defense; (6) the trial court failed to give a requested jury instruction on reasonable doubt; (7) the trial court failed to explicitly instruct the jury that the prosecution had the burden of proving the absence of heat of

7

passion beyond a reasonable doubt; (8) the trial court failed to define the term "great

bodily harm" and erroneously instructed on accident; (9) Petitioner was prevented from

presenting evidence about the victim's reputation for violence, (10) trial counsel was

ineffective for failing to use evidence of a witness's prior convictions for impeachment;

(11) cumulative error; (12) counsel was ineffective for failing to assert an insanity

defense, a diminished capacity defense, an involuntary intoxication defense or a voluntary

intoxication defense, (13) the trial court improperly denied Petitioner's motion for relief

from judgment because *Crawford* applied retroactively; and (14) Petitioner was denied a

fair trial when one of the jurors allegedly gave false information during *voir dire*.

## III.    Standard

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim –

(1)      resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined
by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

8

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

9

at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Discussion

### A.    Procedural Default

Respondent argues that certain of Petitioner's claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding

10

against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003),

*citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel

giving the [other] question priority, for example, if it were easily resolvable against the

habeas petitioner, whereas the procedural-bar issue involved complicated issues of state

law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial

economy are best served by addressing the merits of Petitioner's claims.

### B.      Prosecutorial Misconduct Claims

Petitioner's first claim focuses on the prosecutor's conduct. Petitioner argues that

the prosecutor improperly injected race into the trial and invited the jury to convict on the

ground that Petitioner held racist views. He also argues that the prosecutor improperly

vouched for the credibility of prosecution witnesses.

The "clearly established Federal law" relevant to a habeas court's review of a

prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*,

477 U.S. 168, 181 (1986). *Parker v. Matthews*, __ U.S.__, 132 S. Ct. 2148, 2153, (June

11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments

will be held to violate the Constitution only if they 'so infected the trial with unfairness as

to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v.

DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan

Court of Appeals' (which, despite finding the claims not properly preserved, nevertheless,

denied them on the merits) decision denying Petitioner's prosecutorial misconduct claims

"'was so lacking in justification that there was an error well understood an comprehended

11

in existing law beyond any possibility for fairminded disagreement.'" *Parker*, __ U.S. at __, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at __, 131 S. Ct. at 786-87.

First, Petitioner argues that the prosecutor improperly injected race into the trial and invited the jury to convict based upon Petitioner's racist views. During her opening statement, the prosecutor referred to Petitioner's purported statement to Brian Cole (who did not testify) that he "just gutted me a coon." Witness Jeff Hayward testified that Petitioner referred to the victim as a "nigger." The prosecutor asked Petitioner about both statements on cross-examination. In her closing argument, the prosecutor argued that Petitioner viewed the victim as less than human based on his race. The Michigan Court of Appeals, although finding this claim unpreserved for appellate review, nevertheless addressed the merits of this claim. The state court held that the "prosecutor's comments about the role racism played in the murder were permissible in light of the evidence presented at trial, including defendant's comments to his friend that 'he got the nigger.'" *People v. Raymond*, 2000 WL 33401824 at *8.

The prosecutor's argument and cross-examination of Petitioner were relevant to the issue of Petitioner's culpability and intent. The prosecutor's arguments and question were not constructed out of thin air. They were spurred by and consistent with testimony adduced at trial. The prosecutor was not required to ignore this testimony because of its sensitivity. She asked the jury to convict based upon the evidence presented, not based upon Petitioner's views. Thus, the state court's finding of no prosecutorial misconduct was reasonable.

12

Next, Petitioner argues that the prosecutor improperly vouched for the credibility

of prosecution witnesses in her closing and rebuttal arguments as follows:

> There was some indication that Jeff Hayward shouldn't be thought of as
> credible.  I believe the opposite is true.  Certainly Jeff Hayward was
> appearing as though he was perhaps high or certainly out of it, when he
> testified here. But, we believe that his testimony is very truthful . . .

Tr., 3/4/96 at p. 75.

> Petitioner also objects to the following argument:

> Now, I'd like you to look at their motivation.  They're not the greatest
> characters.  They're all hanging around in a group smoking dope.  That's
> certainly true.  But, they didn't want to tell on the defendant.  They didn't
> tell on the defendant for more than one year.  Pastras lied, when first
> contacted and Hayward only came forward after Banks insisted the police
> wanted to know who he was and Banks wouldn't even give up Hayward's
> name. These people did not want to come forward, but we know they came
> with the truth.

Tr., 3/4/96 at 103.

The Michigan Court of Appeals held that much of the prosecutor's closing

argument posited that, based upon the testimony presented at trial, certain witnesses

should be regarded as credible.  The Michigan Court of Appeals held that if certain of the

prosecutor's arguments could be fairly construed as implying the prosecutor possessed

some special knowledge about the truth of the testimony, no misconduct occurred because

the comments were isolated and the court instructed the jury that arguments were not

evidence.

The prosecutor should have refrained stating "we believe" and "we know" that

certain witnesses came forward with "the truth."  But, as the state court noted, the

13

references were brief and the jury was instructed that attorney arguments were not evidence. Thus, this Court finds that the state court's decision was not "so far out of line with the very general standard" established in *Darden* as to entitle Petitioner to habeas relief. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (en banc).

**C.     Ineffective Assistance of Counsel Claims**

Petitioner raises several claims regarding the performance of his trial counsel. He claims counsel was ineffective for failing to: (i) present evidence about why Petitioner responded to killing the victim in an excited manner and why he was more susceptible to provocation than the average person; (ii) use evidence of a witness's prior convictions for impeachment; and (iii) assert an insanity defense, a diminished capacity defense, an involuntary or voluntary intoxication defense.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

14

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A court's review of counsel's performance must be "highly deferential." *Id.* at 689.  Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

In his first and third ineffective assistance of counsel claims, Petitioner argues that his attorney was ineffective in failing to present evidence about why Petitioner responded to killing the victim in an excited manner and why he was more susceptible to provocation than the average person and in failing to present a defense of diminished capacity, insanity or intoxication.  The trial court held an evidentiary hearing on collateral review regarding this claim.  Petitioner's trial attorney Robert Minock, Petitioner, and Petitioner's father testified at the hearing.  Following the hearing, the trial court, specifically applying the *Strickland* standard, held that the decision to present a defense of self-defense rather than one of insanity or diminished capacity was a tactical one.  The trial court further held that the decision was reached after conferring with Petitioner in considerable detail about the defense strategy, and that Petitioner concurred in the strategy.  The trial court found Petitioner's testimony that counsel never discussed

15

possible defenses of insanity or diminished capacity not to be credible.  Moreover, the

trial court held that the record provided no support for an insanity defense and minimal

support for a diminished capacity defense.

"Counsel's reasonable trial decisions are permissible, 'even if mistaken.'" *Schauer*

*v. McKee*, 401 F. App'x 97, 100 (6th Cir. 2010).  "[T]he Constitution does not guarantee

every defendant a successful defense." *Id.*  (internal quotation omitted).  In this case,

defense counsel testified that the various defenses available were considered and

discussed at length with Petitioner.  After considering the alternative, defense counsel,

with the consent of Petitioner, concluded that self-defense was the best defense.

Petitioner was entitled to competent representation, not a "perfect defense."  *Crehore v.*

*U.S.*, 127 F. App'x 792, 796 (6th Cir. 2005).  Defense counsel articulated a reasonable

explanation for his decision.  While another attorney may have proceeded differently,

"[t]here are . . . 'countless ways to provide effective assistance in any given case.  Even

the best criminal defense attorneys would not defend a particular client in the same

way.'"  *Harrington,* 131 S. Ct. at 788-89.  Competent counsel need not be "a flawless

strategist or tactician" and "an attorney may not be faulted for a reasonable

miscalculation."  *Id.* at 791.  At worst, defense counsel's decision to proceed with only a

defense of self-defense was a reasonable miscalculation, which falls far short of

*Strickland*'*s* high bar.

Second, Petitioner claims that counsel was ineffective in failing to impeach

prosecution witness Jeffrey Hayward with two prior felony convictions which contained

elements of dishonesty and theft.  The Michigan Court of Appeals denied this claim. Though the state court's decision on this issue lacked explanation, the decision is still owed deference under the AEDPA.  *Harrington*, 131 S. Ct. at 784.   Michigan Rule of Evidence 609 allows the admission of prior convictions for crimes containing an element of dishonesty or false statement, unless a period of more than ten years has elapsed since the conviction or the witness's release from confinement imposed for that conviction. Mich. Rule of Evidence 609(a)(1) & (c).  Here, Hayward's convictions pre-dated the trial by well over ten years.  Therefore, Petitioner cannot show counsel was ineffective in failing to impeach the witness with those convictions.

### D.      Sufficiency of the Evidence

Petitioner argues that insufficient evidence was presented to convict him of second-degree murder because the evidence presented supported only a finding of manslaughter or a finding that he acted in self-defense or imperfect self-defense.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'"  *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner

18

guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998). The malice element is satisfied "by showing that the defendant possessed the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with the knowledge that death or great bodily harm would be the probable result. . . . Malice can be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Djordjevic*, 584 N.W.2d 610, 612 (Mich. Ct. App. 1998) (internal citation omitted).

The Michigan Court of Appeals held, in pertinent part:

In this case, defendant admitted causing the victim's death, so the first and second elements [of second-degree murder] were met. The third element, malice, may be inferred from defendant's use of a knife – a deadly weapon. *Carines*, supra, 460 Mich. at 760; *People v. Turner*, 213 Mich.App 558, 567; 540 NW2d 728 (1995). Moreover, viewing the evidence in the light most favorable to the prosecutor, defendant's claim of self-defense is overcome by the evidence that instead of just leaving the scene, defendant looked for the unarmed victim, chased him down, and stabbed him at least twice. The evidence was sufficient to support the second-degree murder conviction.

*Raymond*, 2000 WL 33401824 at *7.

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v.*

19

*Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, __ (2010), (quoting *Jackson*, 443 U.S. at 326).  According the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty of second-degree murder did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### E.   Motion for Directed Verdict on First-Degree Murder

Petitioner claims that he is entitled to habeas corpus relief because the trial court erred in denying his motion for a directed verdict and dismissal on the charge of first-degree murder because insufficient evidence was presented to establish premeditation and deliberation.  Petitioner argues that submission of this charge to the jury resulted in a compromise verdict.

Some courts have held that submission to the jury of a charge not supported by sufficient evidence is harmless error where the defendant is acquitted of that charge.  *See Howard v. United States,* 389 F.2d 287, 292 (D.C. Cir. 1967); *United States v. Alexander*,

471 F.2d 923, 966 (D.C. Cir. 1972). The Sixth Circuit Court of Appeals, however, has yet to directly address this question. *See Daniels v. Burke*, 83 F.3d 760, 765 n.4 (6th Cir. 1996). In *Daniels*, the petitioner argued that his right to due process was violated when the trial court allowed a first-degree murder charge to be submitted to the jury. The petitioner argued that there was no justification for submission of that charge, and, even though he was acquitted of first-degree murder, he suffered prejudice because the conviction for second-degree murder may have been a compromise verdict. *Id.* at 765. The Sixth Circuit Court of Appeals held that it need not address whether to apply the harmless error rule based upon the petitioner's acquittal of that charge because sufficient evidence from which to conclude that the petitioner was guilty of first-degree murder was presented, and, the petitioner's due process claim, therefore, was meritless *Id.*

In this case, the Michigan Court of Appeals held that sufficient evidence was presented to support submission of the first-degree murder charge to the jury, stating, in pertinent part:

> First-degree premeditated murder is defined in M.C.L. § 750.316(1)(a); MSA 28.548(1)(a) as a "willful, deliberate, and premeditated killing." A conviction of first-degree, premeditated murder thus requires proof "that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *Kelly, supra*, 231 Mich. App at 642. These elements may be inferred from the circumstances surrounding the killing. *People v. Ortiz-Kehoe*, 237 Mich. App 508, 520; 603 N.W.2d 802 (1999). "Premeditation and deliberation require sufficient time to allow the defendant to take a 'second look.'" *Kelly, supra*, 231 Mich. App. at 642. However, "[o]ne cannot instantaneously premeditate a murder." *People v. Plummer*, 229 Mich. App 293, 305; 581 N.W.2d 753 (1998). Rather, there must be "substantially more reflection on and comprehension of the nature of the act than the mere amount of thought necessary to form the intent to

kill." *Id.* at 301.  A non-exhaustive list of factors which may be considered to establish premeditation includes: "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *Id.* at 300.

In this case, viewing the evidence presented by the prosecutor up to the time the motion for a directed verdict was made in the light most favorable to the prosecution, as we are required to do, *People v. Crawford*, 232 Mich.App 608, 615-616; 591 N.W.2d 669 (1998), we find that a rational trier of fact could have found that the essential elements of first-degree murder were proven beyond a reasonable doubt.  There was sufficient evidence from which a reasonable jury could conclude that defendant had an opportunity to take a "second look" before carrying out his intention to kill the victim. The prosecutor presented evidence that defendant looked for and chased down the unarmed victim.  He then stabbed the victim at least twice and told him "That'll show you," and "I told you don't f[uck] with me."  After the stabbing, defendant told a friend that he "got the nigger."  Thus, defendant's actions before and after the crime indicate that the killing was premeditated.  *Plummer, supra*, 229 Mich. App. at 300.  Moreover, the circumstances of the killing itself, including the location of the wounds inflicted, demonstrates premeditation.  *Id.*  Although the use of a knife, alone, does not raise an inference of premeditation, *People v. Oster*, 67 Mich. App, 490, 497; 241 N.W.2d 260 (1976), the victim suffered defensive wounds.  This can be evidence of premeditation.  *People v. Johnson*, 460 Mich. 720, 733; 597 N.W.2d 73 (1999).  In sum, viewing the evidence presented up to the time of defendant's motion in the light most favorable to the prosecutor, we conclude that the trial court did not err by denying defendant's motion for a directed verdict.

*Raymond*, 2000 WL 33401824 at *6.

According the state court's factual determinations a presumption of correctness, the Court holds that the state court's decision that sufficient evidence was presented to support submission of the first-degree premeditated murder charge to the fact finder was not an unreasonable application of Supreme Court precedent.  Thus, Petitioner's claim is meritless.

22

### F.      Jury Instructions

Petitioner raises several claims related to jury instructions.  He claims the trial court erred in failing to: (i) instruct the jury on imperfect self defense; (ii) give a requested instruction on reasonable doubt; (iii) instruct the jury that the prosecution bore the burden of proving beyond a reasonable doubt the absence of heat of passion; (iv) define the term "great bodily harm"; and (v) properly instruct on accident.

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement.  Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation."  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (internal citation omitted).  An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'"  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).

First, Petitioner argues that the trial court erred when it failed to give an imperfect self-defense instruction under an excessive force theory.  The Michigan Court of Appeals

23

held that the instruction was not warranted under Michigan law.  It is outside the province of a federal court, on habeas review, to second-guess a state court's interpretation of state law.  *Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003).  Where a state appellate court has assessed the necessity of a particular jury instruction under state law, a federal habeas court cannot question that state-law finding.  *Id.*  Therefore, this claim fails to state a claim upon which habeas relief may be granted.

Second, Petitioner argues that the trial court erred in denying his request for one of two reasonable doubt instructions and that the instruction actually given reduced the burden of proof necessary for a conviction.  The following instruction was given:

> A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence.  It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense.  A reasonable doubt is just that, a doubt that's reasonable after a careful and considered examination of the facts and circumstances of the case.

Tr., 3/4/96 at 119-20.

Petitioner argues that this instruction, in contrast to the two alternative instructions he proposed, was circular and did little to convey the meaning of reasonable doubt.  He argues that "moral certainty" or "hesitate to act" language would have better defined the term.  The Michigan Court of Appeals held that the given instruction adequately conveyed to the jury the required level of proof.

The Sixth Circuit has held that there are no "magic words" that must be used to define the state's burden of proof.  *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999).  Rather, the Due Process Clause requires that the instruction "not lead the jury to convict

24

on a lesser showing than 'reasonable doubt' and when taken as a whole, adequately conveys the 'concept' of reasonable doubt." *Id*. The instruction given in this case was identical to that considered and approved in *Binder*. Thus, this claim does not warrant habeas relief.

Next, Petitioner argues that the trial court erred in failing to specifically instruct the jury that the prosecutor bore the burden of proving, beyond a reasonable doubt, that he did not act out of passion or anger. The Michigan Court of Appeals denied this claim, holding:

> [T]he instructions given sufficiently protected defendant's rights. The substance of defendant's special instruction was covered by the trial court's instruction to the jury that, in order to convict defendant of murder, the prosecutor must prove that the killing did not occur under circumstances that would reduce it to a lesser offense. The court also instructed the jury that murder could be reduced to manslaughter under certain circumstances. The court then set forth those mitigating circumstances for the jury. Therefore, viewed as a whole, the instructions informed the jury that it was the prosecutor, not defendant, who was required to prove that the mitigating circumstances did not occur. Under these circumstances, defendant's special instruction was unnecessary.

*Raymond*, 2000 WL 33401824 at *4.

In *Jacobs v. Sherman*, 301 F. App'x 463 (6th Cir. 2008), the Sixth Circuit Court of Appeals rejected an argument essentially identical to Petitioner's. The petitioner in *Jacobs* argued that the trial court erred in failing to instruct the jury that the state had the burden of proving the absence of heat of passion in order to prove murder. In that case, the trial court twice informed the jury that the prosecution had the burden of proving each element beyond a reasonable doubt. The Sixth Circuit held that because the instructions

25

specifically placed the burden of proving intent beyond a reasonable doubt on the

prosecution, the absence of a specific instruction regarding the absence of heat of passion

did not result in a due process violation.  *Id.* at 467-68.

In this case, the trial court similarly instructed the jury that the prosecutor bore the

burden of proving each element beyond a reasonable doubt.  Therefore, the state court's

decision that the instructions were adequate is in accord with Sixth Circuit case law and a

reasonable application of Supreme Court precedent.

Next, Petitioner argues that the trial court violated his right to due process by

failing to define the term "great bodily harm" when instructing the jury on second-degree

murder and in giving an inadequate accident instruction.   The Michigan Court of Appeals

held that Michigan law did not require a jury to be instructed on the definition of "great

bodily harm" and that a definition was not required because the term is not "obscure or

difficult to understand."  *Raymond*, 2000 WL 33401824 at *5.  In addition, the state court

held that the accident instruction properly explained the intent necessary for second-

degree murder.

Petitioner failed to demonstrate that the jury instruction was erroneous under state

law.  Because the instruction was correct under state law, Petitioner cannot show that it

had any prejudicial effect, much less that it "so infused the trial with unfairness as to deny

due process of law."  *Estelle*, 502 U.S. at 75.  Petitioner therefore cannot meet his burden

of showing fundamental unfairness in violation of due process. He is not entitled to

habeas relief with respect to this claim.

### G.    Victim's Reputation for Violence

Petitioner next claims that habeas relief should be granted because the trial court excluded evidence of the victim's reputation for violence, denying Petitioner his right to present a defense.

While the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 307 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.*, *citing Rock v. Arkansas*, 483 U.S. 44, 58 (1987); *see also Chambers v. Mississippi*, 410 U.S. 283, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967). In this case, the Michigan Court of Appeals held that the evidence was inadmissible because Michigan Rule of Evidence 405(a) limits character trait evidence to reputation or opinion evidence – evidence of specific instances of conduct is not allowed. *Raymond*, 2000 WL 33401824 at *9. The only evidence offered at trial regarding the victim's character was the victim's prior convictions, evidence that was inadmissable under Michigan law. The resolution of this evidentiary question did not violate Petitioner's constitutional right to present a defense.

### H.    Alleged *Crawford* Violation

In his thirteenth claim, Petitioner argues that the state court erred in failing to

27

apply *Crawford v. Washington*, 541 U.S. 36 (2004), retroactively to his case on collateral

review. *Crawford* is not applicable on collateral review or retroactively. *Whorton v.*

*Bockting*, 549 U.S. 406 (2007); *Dorchy v. Jones*, 398 F.3d 783 (6th Cir.2005). Therefore,

habeas relief is denied on this claim.

## I.      Juror Misconduct

Petitioner argues that a juror gave false information under oath during *voir dire*.

Juror Timothy Mayotte revealed during *voir dire* that his brother-in-law had been shot

during a robbery attempt. Mayotte stated he did not know if drugs were involved in the

robbery. Mayotte repeatedly stated under oath that he could be impartial. Petitioner

presents an affidavit from a private investigator who interviewed another juror, Terry

Fielder, approximately nine months after the trial ended. The investigator stated that

Fielder felt another juror, believed to be Mayotte, wanted to convict Petitioner of first-

degree murder as soon as he heard drugs were involved in the crime. Petitioner argues

that Mayotte's pro-prosecution bent, as characterized by Fielder and the private

investigator, renders Mayotte's *voir dire* testimony perjured and denied him his right to a

fair trial.

The Sixth Amendment right to trial by jury encompasses the right to a fair trial by

a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717 (1961). The right to due process,

however, does not necessarily require a new trial in every instance in which a juror is

potentially biased. *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Rather, "[d]ue process

means a jury capable and willing to decide the case solely on the evidence before it, and a

28

trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.*  To establish entitlement to a new trial because of juror dishonesty during *voir dire*, a defendant "must first demonstrate that a juror failed to answer honestly a material question . . . and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).  Only juror misconduct that deprives a defendant of a fair and impartial trial warrants habeas relief. *Clemmons v. Sowders*, 34 F.3d 352, 355 (6th Cir. 1994).

The right to an impartial jury imposes on the trial judge the duty to investigate allegations of external jury influences.  *Remmer v. United States*, 347 U.S. 227, 229-230 (1954).  At the same time, the Supreme Court has, with few exceptions, adhered to "the near-universal and firmly established common-law rule in the United States flatly prohibit[ing] the admission of juror testimony to impeach a jury verdict." *Tanner v. United States*, 483 U.S. 107, 117 (1987).  The Supreme Court has recognized that "[t]here is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior," while simultaneously observing that "[i]t is not at all clear . . .  that the jury system could survive such efforts to perfect it." *Tanner*, 483 U.S. at 120.  "Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct." *Id.* at 120-21.

29

Juror Fiedler's comments to the investigator are inadmissible to challenge the verdict because they reflect the jury's internal deliberations. *Tanner*, 483 U.S. at 117. In addition, nothing in the affidavit submitted by Petitioner establishes that Mayotte lied during *voir dire*. Thus, Petitioner has failed to show any juror misconduct.

### J.    Cumulative Effect

Finally, Petitioner claims that the cumulative effect of the alleged errors rendered his trial fundamentally unfair in violation of due process. The cumulative weight of alleged constitutional trial errors in a state criminal proceeding does not warrant federal habeas relief because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Therefore, habeas relief is denied on this claim.

## V.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)

(citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI.     Conclusion

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


                                        s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        UNITED STATES DISTRICT JUDGE

DATE: August 30, 2012

                        CERTIFICATE OF SERVICE

        I hereby certify that on the above date a copy of this Opinion and Order was served
upon the Petitioner via ordinary U.S. Mail, and Counsel for the Respondent,
electronically.

                                        s/Bernadette M. Thebolt
                                        Case Manager